**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RIVERPORT INSURANCE COMPANY,        )
                                    )
            Plaintiff,             )   Case No.: 2:18-cv-00330-GMN-NJK
                                    )
  vs.                               )   **ORDER**
                                    )
STATE FARM FIRE AND CASUALTY        )
COMPANY,                            )
                                    )
            Defendant.             )
                                    )

Pending before the Court are the Motions for Summary Judgment, (ECF Nos. 13, 22), filed by Defendant State Farm Fire and Casualty Company ("State Farm"). Plaintiff Riverport Insurance Company ("Riverport") filed Responses, (ECF Nos. 15, 34), and State Farm filed Replies, (ECF Nos. 16, 37).

Also pending before the Court is Riverport's Motion for Summary Judgment, (ECF No. 25). State Farm filed a Response, (ECF No. 31), and Riverport filed a Reply, (ECF No. 33). State Farm and Riverport provided Supplemental Briefs, (ECF Nos. 46, 48), in support of their Motions.

For the reasons discussed below, the Court **GRANTS** State Farm's Motions for Summary Judgment, and **DENIES** Riverport's Motion for Summary Judgment.

**I.    BACKGROUND**

The case arises from injuries sustained by Angela DiMaria ("DiMaria") when she fell in a shopping center parking lot owned by D&L Development ("D&L"). (State Farm's Mot. Summ. J. ("MSJ") 8:4–16, ECF No. 13); (Exam. DiMaria at 26:11–29:6, 30:14–42:10, Ex. N to State Farm's MSJ, ECF No. 13-14); (Riverport's MSJ 3:16–18, ECF No. 25); (Lease, Ex. 2 to

Riverport's MSJ, ECF No. 25-2). DiMaria's fall occurred right after she left Spirals Hair & Nails Salon ("Spirals"), which was one of the tenants renting space within D&L's shopping center. (Exam. DiMaria 8:10–38:23, Ex. 4 to Riverport's MSJ); (Lease, Ex. 2 to Riverport's MSJ). DiMaria attributed her fall to an uneven and cracked portion of asphalt that she tripped on while getting into her car located in one of the shopping center's handicapped parking spaces. (Exam. DiMaria 27:4–38:23, Ex. 4 to Riverport's MSJ).[1]

As part of the Lease Agreement between Spirals and D&L, Spirals had to have "public liability insurance to protect against any liability to the public, incident to the use of or resulting from any occurrence in or about said premises." (Lease, Ex. 2 to Riverport's MSJ, ECF No. 25-2). The Lease Agreement defined the "premises" for Spirals as "8544 Del Webb Blvd. . . . Together with the use of driveways and parking in common with the other tenants of Rampart Plaza." (*Id.*). Spirals accordingly obtained a commercial general liability policy from State Farm (the "Policy"), and listed D&L as an additional insured on that Policy. D&L also maintained its own insurance through Riverport.

On June 27, 2016, D&L received correspondence from an attorney for DiMaria ("Demand Letter"), which notified D&L of DiMaria's injuries and her potential claims for damages. (Letter from Royi Moas, Esq. to D&L, Ex. 5 to Riverport's MSJ, ECF No. 25-5). About four months later, D&L's counsel (David J. Feldman, Esq.) sent DiMaria's Demand Letter to Spirals and State Farm, alongside correspondence discussing DiMaria's threatened claims. (Nov. 2, 2016 Letter at 9-11, Ex. 5 to Riverport's MSJ, ECF No. 25-5). D&L's counsel also demanded that State Farm defend and indemnify D&L for any of DiMaria's claims. (*Id.*). State Farm responded a few weeks later, stating that it was reviewing the documents from

---

[1] At the time of DiMaria's fall, she was eighty-nine years old; and she illustrated her route after leaving Spirals as walking along a sidewalk, down a ramp, then onto the parking lot. (Exam. DiMaria 8:8–16:7, Ex. 4 to Riverport's MSJ, ECF No. 25-4). DiMaria explained that her fall occurred on the asphalt of the parking lot, not on an adjoining portion with the ramp. (*Id.*).

D&L, and that it would advise D&L of its decision to accept or reject the tendered request for defense and indemnity. (Nov. 29, 2016 Letter from State Farm at 12, Ex. 5 to Riverport's MSJ).

On February 28, 2017—after Riverport received State Farm's response, but before State Farm decided to accept or deny coverage—Riverport and DiMaria participated in a mediation. (Aff. David Feldman ("Feldman") ¶¶ 8–12, Ex. 1. to Riverport's MSJ, ECF No. 25-1). Though State Farm did not participate in that mediation, Riverport and DiMaria reached a settlement for $190,000.00. (*Id.* ¶ 13). Riverport then paid that settlement amount on behalf of D&L based on D&L's insurance policy with Riverport. (*Id.*).

Roughly two months after that mediation, State Farm notified Riverport that it was denying coverage for DiMaria's injuries because Spirals only purchased coverage for the "actual floor space" leased to Spirals, and not the parking lot leased and used in common with other tenants. (April 21, 2017 Letter from State Farm to Feldman, Ex. 5 to Riverport's MSJ, ECF No. 25-5). Because State Farm denied D&L's demand for defense and indemnification, Riverport commenced this action seeking a declaration of coverage under the Policy and seeking indemnity or contribution for the amount that Riverport paid to settle with DiMaria. (Compl., ECF No. 1). Riverport's Complaint asserts five causes of action: (1) declaratory relief; (2) equitable indemnity; (3) equitable subrogation; (4) equitable contribution; (5) breach of contract. (*Id.* ¶¶ 14–43).

State Farm now moves for summary judgment in its favor for each of Riverport's claims. (State Farm's MSJs, ECF Nos. 13, 22). Riverport conversely moves for summary judgment in its favor and against State Farm on all claims. (Riverport's MSJ, ECF No. 25).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and

the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

State Farm moves for summary judgment by arguing that Riverport's claims fail as a matter of law because State Farm's Policy with Spirals does not include insurance coverage for DiMaria's injuries sustained in D&L's shopping center parking lot. (State Farm's MSJ 2:1–6, 11:22–22:9, ECF No. 13); (State Farm's MSJ 6:24–17:5, ECF No. 22). Riverport conversely moves for summary judgment by arguing that the Policy covers DiMaria's injuries based on both the plain language of the Policy and surrounding evidence that reveals the parties' intent when obtaining the Policy. (Riverport's MSJ 10:7–11:15, ECF No. 25). Riverport further argues that State Farm had a duty to defend D&L against DiMaria's potential claims, which State Farm failed to satisfy prior to Riverport's settlement with DiMaria. (*Id.* 11:16–14:11).

The Court's discussion below first addresses the extent of the Policy's coverage. The Court then addresses the merits of Riverport's claims based on the extent of that coverage.

### A. State Farm's Coverage of D&L as An Additional Insured

"An insurance policy should 'be read as a whole,' and its 'language should be analyzed from the perspective of one untrained in law or in the insurance business. Policy terms should be viewed in their plain, ordinary and popular connotations.'" *Fourth St. Place v. Travelers Indem. Co.*, 270 P.3d 1235, 1239 (Nev. 2011), *as modified on reh'g* (May 23, 2012). "[A] court must look to the entire contract of insurance for a true understanding of what risks are assumed by the insurer and what risks are excluded." *Nat'l Union Fire Ins. Co. of State of Pa. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380, 1382 (Nev. 1984).

#### 1. *Ambiguous Language*

The central language at issue in State Farm's Policy is the language that names D&L as an "additional insured," which states:

1. Section II – WHO IS AN ADDITIONAL INSURED of SECTION II – LIABILITY is amended to include as an additional insured, any person or organization shown in the Schedule, but only with respect to liability arising out of the ownership,

> maintenance or use of that part of the premises leased to you and shown in the Schedule.

(Certified Copy of Policy No. 98-BJ-M302-8 at 79, Ex. L to State Farm's MSJ, ECF No. 13-12). The corresponding "Schedule" defines "additional insured" as "D&L Development & ALI BUBBA INC DBA THE EQUITY GROUP"; and it identifies the "premises" of Spirals as "8544 DEL WEBB BLVD LAS VEGAS NV 89134." (*Id.*).

State Farm argues that, based on the terms of the Schedule and Policy alone, there is no mention of indemnity coverage for an additional insured with the driveways or parking lot that Spirals shared with other tenants of the shopping center. (State Farm's MSJ 12:8–26). Therefore, State Farm contends that the Policy does not include coverage of D&L for DiMaria's injuries. (*Id.*).

Nevada courts interpreting insurance policies with similar "arising out of" language as that in the Policy have found such language to be ambiguous. For example, the Nevada Supreme Court in *National Union Fire Insurance Co. v. Caesars Palace Hotel & Casino*, 729 P.2d 1129 (Nev. 1990), had to interpret an insurance policy that named Caesars Palace Hotel and Casino as an additional insured, "but only with respect to liability *arising out of operations* performed for such insured, by or on behalf of the named insured." *Nat'l Union Fire Ins. Co.*, 792 P.2d at 1130 (emphasis added). That insurance policy covered a boxing match promoted by the policy's named insured, and the match took place on a temporary arena set up in Caesars' parking lot. *Id.* at 1129–30. When the match ended, a spectator was injured while leaving the temporary arena through a corridor leading to Caesars' hotel. *Id.* The injured spectator later recovered a judgment in a personal injury action against Caesars; and Caesars sought indemnification for the expenses and settlement of the personal injury action through the named insured's insurance policy. *Id.* The named insured rejected coverage on the ground that the spectator's injuries occurred after the boxing match and inside Caesars' hotel. *Id.* The

Nevada Supreme Court was then faced with the issue of whether the insurance policy's language—particularly the "arising out of operations" language—was ambiguous and could potentially include coverage for the spectator's injuries in the corridor. The court concluded that, "[h]ere, the scope of coverage provided by virtue of the words 'arising out of operations' is ambiguous." *Id.* at 1130. The court accordingly remanded the case to the district court for discovery on the parties' intent when obtaining the Policy regarding the expected scope of liability coverage. *Id.*

Like in *National Union Fire Insurance*, Riverport and State Farm offer different but reasonable interpretations of the Policy's "arising out of" language regarding coverage of D&L as an additional insured. According to Riverport, the Policy's language does not explicitly limit coverage to the interior of Spirals, meaning the Policy's coverage might extend to areas around the exterior and into common areas. (Riverport's MSJ 10:7–11:15, ECF No. 25). Other provisions of the Policy also reflect coverage of circumstances outside the interior of Spirals, though those other provisions concern coverage for physical loss of property and in the context of Spirals as the primary insured. (Certified Copy of Policy No. 98-BJ-M302-8 at 16, Ex. L to State Farm's MSJ, ECF No. 13-12) (discussing coverage for buildings and personal property within "100 feet of the described premises"). State Farm, by contrast, argues that the "arising out of" language would include coverage of an additional insured only for an incident within the precise square-footage for the unit leased by Spirals as stated in the Schedule. (State Farm's MSJ 12:8–26, ECF No. 13). This interpretation aligns with the Policy's narrow definition of "premises" to reflect the mere address of Spirals stated in the Schedule, and not the parking lot and common areas as discussed in the parties' Lease. (*See* Certified Copy of Policy No. 98-BJ-M302-8 at 79, Ex. L to State Farm's MSJ).

When looking at the Policy's terms in their "plain, ordinary and popular connotations," and in the context of the Policy "as a whole," the Court finds that the Policy's language on its

coverage of D&L as an additional insured is ambiguous. *See Fourth St. Place*, 270 P.3d at 1239. To determine the meaning of the Policy's coverage of D&L as an additional insured, the Court therefore considers not merely the language of the Policy, "but also the intent of the parties, the subject matter of the policy, the circumstances surrounding its issuance." *Nat'l Union Fire Ins. Co.*, 792 P.2d at 1130; *Nat'l Union Fire Ins. Co. of State of Pa. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380, 1382 (Nev. 1984). Further, Nevada uses the contract principle that "in the absence of any concrete facts pointing to a different intent . . . unclear terms are interpreted against the insurer and, unless express limiting language exists, in favor of coverage." *Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co.*, 184 P.3d 390, 395 (Nev. 2008).

### 2. *Intent of the Parties*

In interpreting the Policy by looking beyond the Policy's language, the Court should seek "to effectuate the reasonable expectations of the insured." *Nat'l Union Fire Ins. Co. of State of Pa.*, 682 P.2d at 1383 (citations omitted). The Court's analysis thus begins with evidence as to D&L's intent.

The testimony of Sue Ellen Crider ("Crider"), who D&L designated pursuant to Federal Rule of Civil Procedure 30(b)(6) as its representative, is most helpful to determining the intent behind the Policy. During her deposition testimony, State Farm's counsel asked, "And would you agree with me that Spirals only leased the interior of 8544 Del Webb Boulevard, Nevada, 89134," to which Crider responded, "yes." (Dep. Sue Ellen Crider at 6, Ex. 2 to State Farm's MSJ, ECF No. 31-2). Further, when asked if "Section II" of the Policy covered only the "inside of the building [of Spirals]," she answered, "yes," since D&L had its own insurance for the outside of the building. (*Id.* at 6–8). Especially striking is Crider's testimony agreeing with State Farm's counsel that "Spirals would not be responsible" for DiMaria's injuries. (*Id.* at 8, 9). Crider also testified that the Policy appears to comply with the Lease's indemnity requirement between D&L and Spirals. (*Id.* at 9–16).

Riverport contends that, when construing the Policy with the Lease's terms, the Policy could not be limited to the mere interior of Spirals as argued by State Farm. (Riverport's MSJ 10:7–11:15, ECF No. 25). Specifically, Riverport points to the Lease's terms stating that Spirals must maintain liability insurance for incidents "in or about the premises," and that the "LESSEE assumes all risks of injury or damages . . . in or about the premise." (*Id.*). This contention appears correct: the Policy's language and the Lease together suggest coverage beyond the exact interior square-footage of Spirals. Indeed, State Farm's Claims Team Manager, Brain Ingersoll ("Ingersoll"), testified that the Policy may include the "sidewalks. . . . [or] the 'ways and means adjacent to the building," which "*may*" include the parking lot. (Dep. Brian Ingersoll at 14, Ex. 4 to Resp., ECF No. 34-4). However, Ingersoll did not testify that the Policy did, or did not, include the parking lot. (*See id.*). In light of that equivocal statement, Crider's testimony again serves as guidance—principally where Crider stated that "in and about the premises" does not go all the way to the parking lot. (Dep. Sue Ellen Crider at 6, 8, 9, Ex. 2 to State Farm's MSJ, ECF No. 31-2). Moreover, the Lease has a crossed-out portion about repair and maintenance of the parking lot being the lessor's responsibility, but other portions about the "windows, doors, air-conditioning, and heating equipment" are in-tact. (Dep. Sue Rokaw at 5, Ex. M to State Farm's MSJ, ECF No. 22-13). Thus, in light of D&L's stated intent for creating the Lease and creating the condition that it be named as an additional insured on the Policy, the intent behind the Policy reveals it to not extend coverage for DiMaria's injuries suffered in the shopping center parking lot.

Discerning the intent behind the Policy as not including coverage for DiMaria's injuries also appears to be a reasonable and often-taken approach with insurance policies that use the "arising out of" language for an additional insured. For example, in *Seaway Properties, LLC v. Fireman's Fund Ins. Co.*, 16 F. Supp. 3d 1240 (W.D. Wash. 2014), the court explained how its "review of case law suggests that most states' courts have reached the same conclusion . . . .

The mere fact that a person intending to visit a lessee is injured in a common area is insufficient to confer coverage on a lessor who is the lessee's additional insured." *Seaway Properties, LLC*, 16 F. Supp. 3d at 1250; *see also Fireman's Fund Ins. Co. v. Discover Prop. & Cas. Ins. Co.*, No. C 08-03079 WHA, 2009 WL 2591394, at *4 (N.D. Cal. Aug. 21, 2009) (finding that a bookstore's insurance policy, which extended liability to a strip mall owner for "liability arising out of the [bookstore's] ownership, maintenance or use of . . . the premises," did not cover a person's injuries suffered while "walking on the public sidewalk to the bookstore."). The court in *Seaway* ultimately found that Washington state law required a finding that the additional insured was covered by the named insured's policy for injuries sustained in common areas, as other courts have found when interpreting their state's laws. *Seaway Properties, LLC*, 16 F. Supp. 3d at 1249–52; *see Nat'l Fire Ins. Co. of Hartford v. Fed. Ins. Co.*, 843 F. Supp. 2d 1011, 1016 (N.D. Cal. 2012). But the evidence here shows that D&L and Spirals did not intend the Policy to extend indemnity coverage to D&L for DiMaria's injuries suffered after leaving Spirals and after walking past the adjoining sidewalk, down a ramp, and into the shopping center parking lot shared by all tenants.

While courts are hesitant to grant summary judgment when an ambiguity exists with a contract, summary judgment is appropriate when the court is not faced with "contradictory or conflicting evidence." *San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*, 132 F.3d 1303, 1307 (9th Cir. 1997). Moreover, when parties stipulate to the relevant facts, contract interpretation is a question of law. *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1231 (D. Nev. 2010); (State Farm's MSJ 2:16–20, ECF No. 13); (Resp. 3:26–27, ECF No. 15). The evidence here shows the Policy as not including indemnity coverage for D&L with DiMaria's injuries in the common area parking lot, and no evidence contradicts or conflicts with that showing. Summary judgment is therefore appropriate in favor of State Farm on this issue. The Court consequently addresses Riverport's claims in light of this conclusion.

## B. Declaratory Relief: Duty to Defend and Indemnify

Riverport's first claim seeks declaratory relief as to whether State Farm breached its duty to defend D&L from liability related to DiMaria's fall and injuries. (Riverport's MSJ 11:16–14:11, ECF No. 25). Riverport claims that it initiated this duty when it sent State Farm the Demand Letter from DiMaria, requested indemnification, and notified State Farm of its upcoming mediation with DiMaria. (*Id.*).

"The duty to defend is broader than the duty to indemnify." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004). The duty arises when the insurer "ascertains facts which give rise to the potential of liability under the [insurance] policy." *Id.* (quoting *Gray v. Zurich Insurance Company*, 419 P.2d 168, 177 (Cal. 1966)). "The purpose behind construing the duty to defend so broadly is to prevent an insurer from evading its obligation to provide a defense for an insured without at least investigating the facts behind a complaint." *United Nat'l Ins. Co.*, 99 P.3d at 1158. Breach of this duty to defend could prevent an insurer from later contesting coverage and indemnification. *See Andrew v. Century Sur. Co.*, 134 F. Supp. 3d 1249, 1262 (D. Nev. 2015).

The Court does not find that Riverport triggered State Farm's duty to defend by merely notifying State Farm of DiMaria's Demand Letter accompanied by a notice of the scheduled mediation. Prior to D&L's settlement with DiMaria, a complaint had not been filed to commence litigation, and Riverport does not provide evidence that it or D&L had an obligation to enter into mediation with DiMaria at that time. *United Nat'l Ins. Co.*, 99 P.3d at 1158 ("Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy."). Though DiMaria's Demand Letter stated facts about her fall and injuries, it only created a threat of litigation rather than "immediate and severe implications" that could affect Riverport and D&L's rights. *Cf Aetna Cas. & Sur. Co. v. Pintlar Corp.*, 948 F.2d 1507, 1516 (9th Cir. 1991) (distinguishing

circumstances that trigger a duty to defend, such as filing a complaint to begin litigation or an administrative claim, from instances involving a "garden variety demand letter" which "only exposes one to a potential threat of future litigation"). Moreover, at the time of the settlement, State Farm was still reviewing the Policy's terms to evaluate the potential for coverage. (Decl. Feldman ¶¶ 4–12, Ex. 1 to Riverport's MSJ, ECF No. 25-1); (Nov. 29, 2016 Letter from State Farm to Feldman at 12, Ex. 5 to Riverport's MSJ, ECF No. 25-5).

Additionally, Riverport did not trigger State Farm's duty to defend D&L based on the Policy's terms. The Policy states that State Farm will "have the right and duty to defend the insured against any 'suit' seeking . . . damages." (Policy at 36, Ex. 3 to Riverport's MSJ, ECF No. 25-3). The Policy later defines "suit" as:

> "a civil proceeding in which damages because of 'bodily injury' . . . are alleged. 'Suit' includes . . . an arbitration proceeding . . . to which the insured must submit or does submit with our consent; or any other alternative dispute resolution proceeding . . to which the insured submits *with our consent*."

(*Id.* at 50) (emphasis added). Riverport claims that it satisfied the Policy's requirements because State Farm gave its "implicit[] consent[]" by not immediately denying coverage or objecting to settlement discussions. (Riverport's MSJ 13:25–28, ECF No. 25). The facts, however, do not suggest implied consent. As discussed above, around the time of the mediation, State Farm explicitly stated that it was still reviewing DiMaria's Demand Letter and investigating whether its Policy covered her injuries; and Riverport has not provided evidence to prove that State Farm, D&L, or Riverport were required to participate in the mediation. (Nov. 29, 2016 Letter from State Farm to Feldman at 12, Ex. 5 to Riverport's MSJ). Thus, the Policy did not impose a duty on State Farm to defend D&L at the time of the settlement.

### C. Equitable Indemnity

Riverport argues that it is entitled to summary judgment on its equitable indemnity claim because "State Farm refused to discharge its contractual duties, which required Riverport to

assume D&L's defense and indemnify it to the tune of $190,000." (Riverport's MSJ 19:20–20:14, ECF No. 25).  However, for the reasons discussed in this Order, State Farm's Policy did not extend coverage to D&L for DiMaria's injuries in the parking lot.  Riverport's claim for equitable indemnity therefore fails.

### D. Equitable Subrogation

Riverport's third claim is for equitable subrogation, which is a claim that "arises when one party has been compelled to satisfy an obligation that is ultimately determined to be the obligation of another." *See Colony Ins. Co. v. Colorado Cas. Ins. Co.*, Case No. 2:12-cv-01727-RFB-NJK, 2018 WL 3312965, at *5 (D. Nev. July 5, 2018) (recognizing equitable subrogation in the context of primary and excess insurance carriers); (Riverport's MSJ 14:13–17, ECF No. 25); (Compl. ¶¶ 23–34, ECF No. 1).  For this claim, the Court considers several factors to determine if the equities favor requiring one party to be responsible for another's expenses: (1) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (2) the claimed loss was one for which the insurer was not primarily liable; (3) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (4) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (5) the insured has an existing, assignable cause of action against the defendant that the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (6) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (7) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (8) the insurer's damages are in a liquidated sum. *Id.* at *6.

Here, the factors weight against equitable subrogation by State Farm for Riverport's settlement with DiMaria.  First, State Farm is not the wrongdoer whose act or omission caused the loss, nor is it legally responsible for the loss caused by the wrongdoer under the Policy.  Rather, repair and maintenance of the parking lot was D&L's responsibility according to the Lease. (*See* Dep. Sue Rokaw at 5, Ex. M to State Farm's MSJ, ECF No. 22-13).  Similarly, because the Policy did not cover DiMaria's injuries, Riverport's claimed loss was not something State Farm is primarily or partially responsible.  Thus, in total, justice does not require that Riverport's settlement payment be entirely shifted from Riverport to State Farm, meaning summary judgment in favor of State Farm is appropriate on this claim.

### E. Equitable Contribution

Next, Riverport claims that it is entitled to equitable contribution in the event that the Court declines to enforce the Policy's language about Riverport's insurance being noncontributory. (Riverport's MSJ 20:15–21:22, ECF No. 25).  An equitable contribution claim arises "where multiple insurance carriers insure the same insured and cover the same risk." *N. Am. Specialty Ins. Co. v. Nat'l Fire & Marine Ins. Co.*, No. 2:10-cv-01859-GMN, 2013 WL 1332205, at *2 (D. Nev. Apr. 2, 2013) (citing *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 303 (Cal. Ct. App. 1998)).  In that circumstance, "each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured." *Id.*

Because the Court finds that State Farm's Policy does not cover DiMaria's injuries, it follows that State Farm is not a co-obligor required to provide equitable contribution for those injuries.  Thus, summary judgment is granted in favor of State Farm on this claim.

### F. Breach of Contract

Last, Riverport asserts a claim for breach of contract against State Farm claiming that, based on the Policy, State Farm breached its duty by refusing to defend and indemnify D&L as

required. (Riverport's MSJ 21:23–22:21, ECF No. 25). Under Nevada law, breach of contract has three elements: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage as a result of the breach. *Saini v. Int'l Game Tech.*, 434 F.Supp.2d 913, 919–20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)).

Here, the Court does not find that State Farm breached the terms of the Policy because it did not have a duty to cover DiMaria's injuries sustained in the shopping center parking lot. Accordingly, summary judgment is granted in favor of State Farm as to this claim.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that State Farm's Motions for Summary Judgment, (ECF Nos. 13, 22), are **GRANTED**.

**IT IS FURTHER ORDERED** that Riverport's Motion for Summary Judgment, (ECF No. 25), is **DENIED**.

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this ___20___ day of September, 2019.

_____
Gloria M. Navarro, District Judge
United States District Court